**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**NICHOLAS L. VASSENELLI,**

                                                  **Plaintiff,**

        **vs.**                                          **5:17-CV-00082**
                                                          **(MAD/ATB)**

**STATE UNIVERSITY OF NEW YORK,**
**UPSTATE MEDICAL UNIVERSITY,**
**INSTITUTE FOR HUMAN PERFORMANCE,**
**JOHN DOE(S) and JANE DOE(S),**

                                                  **Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**BOSMAN LAW FIRM, LLC**                       **AJ BOSMAN, ESQ.**
201 West Court Street
Rome, New York 13440
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**                     **AIMEE M. PAQUETTE, AAG**
**STATE ATTORNEY GENERAL**
Syracuse Office
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        On or about January 3, 2017, Plaintiff commenced this action in New York State Supreme

Court, Onondaga County, alleging that Defendants violated his rights under Title II of the

Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and the New York

Human Rights Law ("NYHRL"). *See* Dkt. No. 1. On January 25, 2017, Defendants removed the

action to this Court. *See id.* In response to a motion to dismiss, Plaintiff amended his complaint as of right on March 22, 2017. *See* Dkt. No. 11.

Currently before the Court is Defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, to stay this action pending the resolution of Plaintiff's parallel action in the New York State Court of Claims. *See* Dkt. No. 14.

## II. BACKGROUND

Plaintiff is a resident of the State of New York, County of Onondaga, and suffers from a qualifying disability under the ADA, the RA, and the NYHRL. *See* Dkt. No. 11 at ¶ 4. Defendant State University of New York, Upstate Medical University, Institute for Human Performance ("IHP") is part of the State University of New York and maintains a place of business at 505 Irving Avenue, Syracuse, New York. *See id.* at ¶¶ 5, 7.

According to the amended complaint, the incident giving rise to this case occurred on January 3, 2014, at approximately 10:30 a.m., at IHP. *See id.* at ¶ 7. Plaintiff, who is partially paralyzed and wheelchair bound, claims that he "was subjected to physical injury, pain and suffering as a result of being struck in his left arm by a nonoperational door (exiting out onto Irving Avenue) while being transported in a wheelchair out of the Institute for Human Performance." *Id.* at ¶ 8. Plaintiff alleges that this occurrence "was caused by reason of the deliberate indifference and/or recklessness and/or carelessness of Defendants in, *inter alia*, failing to repair the entrance and exiting doors of the facility, despite repeated verbal [warnings] and visual notice of the malfunctioning doors by Plaintiff." *Id.* at ¶ 9. Plaintiff claims that the doors, which were intended for handicap access, were broken for approximately ten months prior to Plaintiff's injury and IHP officials and employees "had ample notice of the nonoperational doors,

yet failed to repair and/or provide alternative ingress or egress." *Id.* "In point of fact, approximately one week prior to the incident, Plaintiff made a complaint to 'Tim' who is the head of Physical Therapy at IHP and he e-mailed the maintenance department regarding the malfunctioning doors." *Id.* Additionally, Plaintiff claims that, immediately following the incident, he spoke with Charles Lester, the Building Manager at IHP, and Mr. Lester acknowledged that the door had been "'broken' and were 'malfunctioning' for 'approximately five months.' He stated, among other things, that it takes a 'long time' for the State to approve repairs." *Id.*

Plaintiff argues that such statements demonstrate, among other things, knowledge and deliberate indifference. "Defendants had knowledge that the building was accessed by the public, including persons with special needs and/or in need of accommodation and failed to ensure their safety, access, and were deliberately indifferent . . . in violation of the law." *Id.* Plaintiff claims that, as a place of public accommodation, Defendants were required not only to provide access to handicapped individuals, but also to ensure that their access is safe and effective. *See id.*

Plaintiff claims that, "[a]s a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages. Such damages and injuries include: physical injury to Plaintiff's body, in particular, his left arm; inconvenience; a worsening of his fragile physical and mental state; exacerbation of limited use of his left arm, hand and fingers; pain and suffering, including, shooting pain radiating from his left arm to his left hand and weakness in his left arm and hand and fingers; emotional distress; and loss of enjoyment of life." *Id.* at ¶ 11.

In their motion to dismiss, Defendants contend that Plaintiff's amended complaint should be dismissed because Plaintiff merely alleges that Defendants were negligent in failing to repair the door and failed to enact policies to safeguard against injuries such as the one Plaintiff

suffered. *See* Dkt. No. 14-2 at 9-10. The ADA and RA, however, require Plaintiff to allege

conduct that amounts to intentional discrimination. *See id.* at 10. Although Defendants

acknowledge that the amended complaint now alleges that they were "deliberately indifferent,"

Defendants contend that this conclusory allegation is insufficient to survive a motion to dismiss.

*See id.* Further, Defendants contend that, although Plaintiff does add some facts with respect to

his claim that IHP employees were deliberately indifferent, Plaintiff fails to allege any facts

demonstrating that a policymaker acted with ill will or personal animosity towards Plaintiff based

on his disability. *See id.* at 10-11.

In the alternative, Defendant ask the Court to stay this case pending resolution of

Plaintiff's case in the New York State Court of Claims. *See* Dkt. No. 14-2 at 11-17. Defendants

contend that a stay is appropriate under the *Colorado River* doctrine because the state and federal

proceedings are parallel and the six factors that the Court must consider weigh in favor of

granting the stay. *See id.*

### III. DISCUSSION

**A.    Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v.*

*Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal

sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all

reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493

F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not

extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Although a court's review of a motion to dismiss is generally limited to the facts presented in the

pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

**B.      Individual Defendants**

It is well settled that "[t]he ADA does not provide for individual liability." *Hodges*, 2011 WL 5554866, at *8 (citing *Herzog v. McLane Northeast*, 999 F. Supp. 274, 276 (2001)). As such, the claims against individuals in this action are dismissed.

**C.      ADA and RA Claims**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  To state a claim under the ADA, Plaintiff must therefore show that "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (3) such exclusion, denial or discrimination was by reason of his disability."  *Hodges v. Wright*, No. 9:10-cv-0531, 2011 WL 5554866, *8 (N.D.N.Y. Sept. 29, 2011) (citing *Goonewardena v. New York*, 475 F. Supp. 2d 310, 324 (S.D.N.Y. 2007)).  Claims under Title II of the ADA and the Rehabilitation Act of 1973, 29 U.S.C. § 794, are treated identically.  *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

Further, in order to recover damages under Title II the ADA and the RA, the plaintiff must show that the discrimination was intentional.  *See Frank v. Sachem Sch. Dist.*, 84 F. Supp. 3d 172, 186-87 (E.D.N.Y. 2015) ("[I]t is well settled that monetary damages are only available under Title II of the ADA where the [p]laintiff is able to demonstrate intentional discrimination") (citing *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009)) (other citations omitted).  To prove intentional discrimination under Title II, "a plaintiff must allege facts showing that a policymaker acted with ill will or personal animosity toward him because of his disability or that the policy maker acted with 'deliberate indifference' to his rights under the ADA."  *Id.* at 187 (citation omitted); *see also Garcia v. SUNY Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 115 (2d Cir. 2001).  Deliberate indifference does not require personal animosity or ill will.  *See Loeffler*, 582 F.3d at 275.  Rather, a plaintiff can demonstrate deliberate indifference in the Title II context where an official with authority to address the alleged discrimination and to institute

6

corrective measures on the plaintiff's behalf had actual knowledge of ongoing discrimination against the plaintiff but failed to respond adequately. *See Gershanow v. County of Rockland*, No. 11-CV-8174, 2014 WL 1099821, *4 (S.D.N.Y. Mar. 20, 2014) (citation omitted); *see also Loeffler*, 582 F.3d at 275 (applying the same standard to claims for money damages under the RA) (citations omitted).

In the present matter, the Court finds that Plaintiff has failed to plausibly allege intentional discrimination under the ADA or RA. Plaintiff's amended complaint alleges that he was struck in the arm by a nonoperational door while exiting IHP. *See* Dkt. No. 11 at ¶¶ 7-8. The only allegations regarding the conduct of any specific individuals that could possibly relate to the existence of intentional discrimination are as follows:

> Said occurrence was caused by reason of the deliberate indifference and/or recklessness and/or carelessness of Defendants in, *inter alia*, failing to repair the entrance and exiting doors of the facility, despite repeated verbal and visual notice of the malfunctioning doors by Plaintiff. The doors, purportedly for handicap access, were broken for approximately 10 months prior to the Plaintiff's aforesaid injury and IHP officials and employees had ample notice of the nonoperational doors, yet failed to repair and/or provide alternative ingress or egress. In point of fact, approximately one week prior to the incident, Plaintiff made a complaint to "Tim" who is the head of Physical Therapy at IHP and he e-mailed the maintenance department regarding the malfunctioning doors. Further, immediately after the incident, Plaintiff spoke with Charles Lester, the Building Manager at IHP, and Mr. Lester acknowledged that the doors had been "broken" and were "malfunctioning" for "approximately five months." He stated, among other things, that it takes a "long time" for the State to approve repairs. Such statements and conduct demonstrate, *inter alia*, knowledge and deliberate indifference. Defendants had knowledge that the building was accessed by the public, including persons with special needs and/or in need of accommodation and failed to ensure their safety, access, and were deliberately indifferent as well as in violation of the law. As a place of public accommodation, the government is obligated to not only provide access to the handicap[ped] but to ensure that access is both effective and safe.

Dkt. No. 11 at ¶ 9.

As Defendants correctly contend, Plaintiff fails to allege that someone with authority to address the broken door (the alleged discrimination) knew of this issue and failed to adequately respond. Rather, Plaintiff alleges that when he brought the issue to the attention of "Tim," he immediately emailed maintenance to alert them of the issue. This occurred one week prior to Plaintiff's alleged injury. Nothing in the amended complaint plausibly suggests either the evidence of ill will or animus, or the existence of deliberate indifference. *See Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 930-31 (7th Cir. 2004) (noting that the plaintiff alleged that the defendant city violated the ADA by failing to repair a broken elevator or otherwise secure the plaintiff's safe egress from a city train station after a snowstorm and finding that such "[i]solated acts of negligence by a city employee do not come within the ambit of discrimination against disabled persons proscribed by the ADA"); *Midgett v. Tri-County Metro. Transp. Dist. of Or.*, 74 F. Supp. 2d 1008, 1018 (D. Or. 1999) (holding that the wheelchair-bound plaintiff was not entitled to compensatory damages in suit where he alleged the lifts on the defendant's buses occasionally malfunctioned because he did not demonstrate any discriminatory intent or, at a minimum, deliberate indifference); *Hartman v. Costa Verde Ctr.*, No. 16cv956, 2016 WL 7178964, *3 (S.D. Cal. Dec. 8, 2016) ("The linchpin for an ADA claim is discrimination, not personal injury occasioned by a lift malfunction due to an isolated mechanical malfunction").

Even under a generous reading, the amended complaint does not make any factual allegations that could reasonably give rise to an inference of deliberate indifference, let alone discriminatory animus. The amended complaint does, for example, allege that Defendants were aware of incidents prior to Plaintiff's injury where other wheelchair-bound patrons were similarly harmed or denied access. Nor does the amended complaint allege that Defendants knew that

Plaintiff or other wheel-bound individuals had difficulty entering or exiting the facility until he reported that the doors were not functioning properly.  Plaintiff's formulaic, conclusory allegations regarding discriminatory animus and deliberate indifference are insufficient to nudge his claims across the line from conceivable to plausible.  *See MC v. Arlington Cent. Sch. Dist.*, No. 11-cv-1835, 2012 WL 3020087, *4 (S.D.N.Y. July 24, 2012); *see also Leclair v. Mass. Bay Transp. Auth.*, No. 17-cv-11111, 2018 WL 314813, *6 (D. Mass. Jan. 5, 2018).

Additionally, in this case, Plaintiff alleges that on a single occasion he had trouble with the door while exiting the building.  Indeed, Plaintiff is not even seeking injunctive relief, thereby suggesting that he was not and is not being subjected to an ongoing denial of services.  This one time issue is insufficient to amount to a "denial of services, programs or activities."

It is clear why Plaintiff filed suit in the Court of Claims first regarding this same incident: Plaintiff's claim sounds in garden-variety negligence rather than being based upon a disability discrimination theory.  The Court acknowledges that simply because a plaintiff suffered a physical injury does not automatically convert an ADA claim to one sounding in negligence.  *See, e.g., Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 7-8 (1st Cir. 2000).  Here, however, Plaintiff has failed to allege that he was denied access to services, programs or activities, as is required to plausibly allege a claim for disability discrimination.

Since Plaintiff is not seeking injunctive relief, and because he has failed to plausibly allege facts showing that a policymaker acted with ill will or personal animosity toward him because of his disability or that the policy maker acted with "deliberate indifference" to his rights under the ADA and the RA, the Court grants Defendants' motion to dismiss.

**D.     State-Law Claims**

The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are eliminated before trial. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having determined that all of the claims over which it has original jurisdiction should be dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law causes of action. *See id.* (citing 28 U.S.C. § 1367(c)(3)). As such, Plaintiff's state-law causes of action are dismissed without prejudice.

## E.    Leave to Amend

Plaintiff has neither asked to file a second amended complaint nor otherwise indicated that he is in possession of facts that could cure the deficiencies identified in the Memorandum-Decision and Order. Since Plaintiff has already had an opportunity to amend and because there is no indication that amendment would not be futile, the Court declines to now *sua sponte* grant leave to file a second amended complaint. *See M.C.*, 2012 WL 3020087, at *14 (denying leave to file a second amended complaint under similar circumstances) (citing cases).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss is **GRANTED**; and the Court further

**ORDERS** that Defendants' request to stay this action is **DENIED as moot**; and the Court further

**ORDERS** that Plaintiff's amended complaint is **DISMISSED**; and the Court further

10

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 19, 2018
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

11